James E. SAMS, Jack L. Paradise and Daniel J. Birmingham, Plaintiffs,

v.

OHIO VALLEY GENERAL HOSPITAL ASSOCIATION, a corporation created and organized under the laws of the State of West Virginia, J. Stanley Turk, Administrator of the Ohio Valley General Hospital, Wheeling Hospital, Inc., a corporation created and organized under the laws of the State of West Virginia, and Samuel G. Nazzaro, Administrator of the Wheeling Hospital, Defendants.

Civ. A. No. 1537–W.

United States District Court
N. D. West Virginia.

Aug. 24, 1966.

2. Defendant's Exhibit D–12, in substance:

| | | |
|---|---|---|
| Sale of 200 shares of Hydromatics stock | $2119.93 | |
| Cost of new shares | 1200.00 | |
| Profit | | 919.93 |
| Paid in cash—Feb. 8, 1962 | | 100.00 |
| | | 819.93 |
| Unpaid salary | 346.00 | |
| Unpaid vacation pay | 346.00 | 692.00 |
| | | 127.93 |

Balance for time spent with officers, directors, etc. on pending matters.

McCamic & Tinker, Wheeling, W. Va., for plaintiffs.

Chester R. Hubbard and John D. Phillips, Wheeling, W. Va., for Ohio Valley General Hospital Assn. and J. Stanley Turk.

D. Paul Camilletti, Wheeling, W. Va., for Wheeling Hospital, Inc., and Samuel G. Nazzaro.

## MEMO

MAXWELL, Chief Judge.

The plaintiffs in the above-styled civil action seek damages and injunctive relief, contending that the defendants have unlawfully discriminated against them by refusing to grant staff privileges at both Ohio Valley General Hospital and Wheeling Hospital.

The plaintiffs are doctors, practicing medicine in Belmont County, Ohio. They also are licensed by the State of West Virginia to practice medicine in West Virginia. The hospitals, where plaintiffs seek staff privileges, are located in the city of Wheeling, West Virginia, but serve an area which encompasses several counties in West Virginia, as well as in adjoining Ohio. In fact, it is also alleged that the equational census indicates 40 to 45 percent of the patients at Ohio Valley General Hospital are Ohio residents and also that a large percentage of the patients at Wheeling Hospital are from Ohio. It is alleged that Belmont County, Ohio, wherein the plaintiffs now actively practice, lies within the geographic area served by the two hospitals, being located directly across the Ohio River from Wheeling.

The gist of the plaintiffs' complaint is that the defendants have discriminated against them in such a manner as to deprive them of their rights under the "due process" and "equal protection" clauses of the Fourteenth Amendment.

The defendants, in turn, have each filed a motion to dismiss, the disposition of which is the subject of this ruling. Defendants Ohio Valley General Hospital Association and J. Stanley Turk, administrator, base their motion solely on the contention that this Court lacks jurisdiction. They argue that the requisite "state action," upon which the Fourteenth Amendment has been posited, is lacking.

Defendants Wheeling Hospital, Inc., and Samuel G. Nazzaro, administrator, basically, have confined themselves to the same argument.

Therefore, the Court now will limit itself to the one question, within the limited procedural scope of a motion to dismiss. Does the misconduct complained of fall within the apparently broad boundaries of "state action"?

This Court is of the opinion that the question must be answered affirmatively. Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963); cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); see Cypress v. Newport News General and Non-Sectarian Hospital Association, 251 F.Supp. 667, 669–670 (E.D.Va.1966); cf., Hawkins v. North Carolina Dental Society, 355 F.2d 718 (4th Cir. 1966).

Admittedly, the above cases are factually distinguishable from the present case. The plaintiffs in the above instances were Negroes seeking redress for Constitutional deprivations allegedly resulting from their color. In the case now before the Court, there is no indication that any of the plaintiffs are Negroes. Neither have the plaintiffs here alleged discrimination because of their color. The allegation merely is that there has been a discrimination, in a manner violative of the plaintiffs' Fourteenth Amendment rights.

This distinction, as it appears from the pleadings, should not be, and is not, meaningful. The first question answered by the Fourth Circuit in Simkins v. Moses H. Cone Memorial Hospital, supra, was not whether the plaintiffs' civil rights, because of color, had in fact been violated, but whether there had been "state action." That Court, in other words, first considered the "state action" question, apart from the underlying contentions of the case, so that it could consider, and determine, the requisite jurisdictional foundation.

Finding "state action" in *Simkins* in no way rested upon the fact that the plaintiffs were members of the Negro race. Nor did it rest upon the plaintiffs' allegations that they had been discriminated against because of their color.

"State action," in *Simkins,* was found because a hospital had been directly involved in the federally endowed Hill-Burton program, which involves state supervision of hospital construction and maintenance. The same conclusion was reached in Smith v. Hampton Training School for Nurses, supra. The jurisdictional question in *Smith* also was divorced from the underlying contentions.

In the present case, it is alleged that Ohio Valley General Hospital has "applied for and received (under the Hill-Burton program) $3,352,755.00 from the Federal Government for three different construction projects, the total cost of all three being $9,863,758.00." Alleged in the complaint in this manner, it is not clear whether the hospital has received sums in excess of three million or nine million. The amount is large in either case. It is also alleged that Wheeling Hospital has received $625,976.00 from the Federal Government under the Hill-Burton program. Neither allegation has been denied by the defendants, at this stage of the pleadings.

The plaintiffs further contend that the requisite "state action" is here present since the above-mentioned Hill-Burton funds have been allocated to the two hospitals by the West Virginia Bureau of Hospitals and Medical Facilities, a state agency responsible for allocating and administering federal agents.

Based on the Fourth Circuit Court's well-reasoned holdings in Simkins v. Moses H. Cone Memorial Hospital, supra, and Smith v. Hampton Training School for Nurses, supra, we must agree. The complaint in this case has set out action, regarding allocation and administration of Hill-Burton funds, which is attributable to the State of West Virginia.

Furthermore, the Court sees no logical reason for distinguishing, as the defendants have suggested in their briefs and oral arguments, a case where non-Negroes seek redress for the possible deprivation of their Fourteenth Amendment rights, from a case where the plaintiffs are members of the Negro race. If a hospital's involvement in the Hill-Burton program denotes "state action" in the one case, then, as this Court has determined, it must also do so in the other. In neither case does the finding of "state action" rest upon what group the plaintiffs are members or of what "state action" discrimination they specifically complain. Neither *Simkins* nor *Smith* so indicate.

Therefore, this Court concludes that the conduct complained of falls within the purview of "state action." An order will be entered, denying the defendants' motions to dismiss, and allowing the case to develop further.